TYSON (BELMONT v.). See Case No. 1,281.

---

## Case No. 14,317.

### TYSON et al. v. The JASON.

[Betts' Scr. Bk. 141.]

District Court, S. D. New York. July 24, 1849.

COLLISION — VESSEL AT PIER — BREAKING FROM FASTENINGS.

[1. It is negligence on the part of a vessel to attempt to take and hold a berth at a pier in New York harbor in midwinter, while a strong tide is running, and the river is full of floating ice, without having the supervision and authority of a competent pilot or master on board.]

[2. To constitute misconduct in the management of a vessel, rendering her liable for damage done to another vessel, it is not necessary that the conduct should be intentionally wrongful. Mistake, misjudgment, or ignorance is sufficient; for those in control of her are bound to ordinary care, caution, and skill.]

[3. Where a sailing vessel in tow of a steamer is left at a pier, the act of detaching herself from the steamer, and fastening herself to the pier, is to be considered her act, and she is responsible for damage done to another vessel in consequence of negligence therein, unless she affirmatively shows that she was abandoned and left at the pier in opposition to her wishes.]

[4. An illegal or improper act of a vessel injured by collision is no defense or excuse in favor

of the other vessel, unless it be shown to have conduced to the collision.]

[This was a libel in admiralty by William Tyson and others against the bark Jason to recover damages for injuries occasioned to the ship Probus, with which the Jason collided.]

BETTS, District Judge. The point put directly in issue by the pleadings is the negligent and culpable conduct of the Jason in taking a position outside the pier, without fastening sufficient to secure her there.

I think the decided strength of the evidence on this head is adverse to her. First. It was blameable negligence on her part to come round at that season of the year, and attempt to take and hold a berth, without having the supervision and authority of a competent pilot or master on board. She had neither. Second. It was midwinter, the tide was strong ebb, and there was ice floating in the river, the natural course of which upon the tide would place the Jason in a state of exposure, and those having her management were bound to take notice of those facts, and take measures accordingly. Third. When the steamboat cast off and left her at the dock, and when the ice came upon her, she was insufficiently fastened for her own safety, and that of other vessels near her. This those with her were well aware of, and the pilot, who came to her at the dock, directed additional fasts instantly put out for her protection. These facts are proved by several witnesses.

To constitute blameable misconduct in the management of a vessel, when damage is sustained by another, it is not necessary that the conduct should be intentionally wrongful. Mere mistake, misjudgment, or ignorance is sufficient, because the party is bound to ordinary care, caution, and skill. Not to use these qualities subjects him to the damages he occasions, and no inquiry is made whether he is destitute of them by actual defect. On this issue the case is with the libellant.

The claimants set up, in avoidance of their liability, first, that the steamboat improperly left the bark at the pier, to escape the approaching ice, before she was properly fastened and secured; that the Probus was guilty of illegal conduct in taking a position forbidden by law.

To this point it must be answered that, whatever may be the relative responsibility of the steamer and her tow in respect to other vessels whilst they are under way, propelled by the power of the steamer, yet that in attaching herself to a steamer, and detaching herself when at anchor or at a berth, the sailing vessel determines her course for herself, and the steamer is but her agent. Her consent to the departure of the steamer, and to be left to her own means of protection, must be assumed until the contrary is shown. If the sudden and unexpected desertion of a tow by a steamer, under circumstances leaving the sail boat no means of self-protection, or of avoiding injury to others, will exonerate her from liability for those injuries, the fact of such abandonment and mischance must be proved by her, and that it was in opposition to her wishes.

Second. Claimants do not succeed in placing the case in the situation to call for a decision whether the Probus lying heading toward the outside of the pier, and not up the dock, or if her jib boom was outside the pier, it was an illegal position, the taking of which would exonerate the bark from responsibility for collision with her, because they fail to prove that, if lying entirely within the pier, the collision would any way be more promoted by her being stern up the dock, than if heading that way. The authorities are clear that, if an illegal or improper act of the injured vessel is set up by the colliding one, it cannot avail to her defence or excuse, unless it be shown to have conduced to the collision. The proof here is that the bark, once driven into the slip where the ship lay, must inevitably have come into collision with her. The opinion of some witnesses that the collision was brought about by the bark striking the end of the jib boom outside of the piers, by which she was brought up, and forced against the ship, cannot avail against the greater weight of evidence produced by the libellants, that the jib boom was in fact inside of the piers, and the bark was also not arrested by it on the outside.

Upon a careful revision of the evidence, I cannot see grounds for regarding this collision an inevitable accident. It was undoubtedly accidental, so far as the purpose and intention of those connected with the bark was concerned, but it could have been avoided by the exercise of a reasonable and a prudent precaution, by making the bark adequately fast and secure at the dock, or if that was an improper place for her to lie, and meet the coming ice, by remaining with the steamer until a safe berth could be provided for her. The bark had to take the responsibility of these considerations. Other vessels, lying safely in their berths, had a right to exact of her, in taking a position near them, that she should so do it as not to be the occasion of damage to them; and in a misfortune of serious consequence to herself, as well as another, the law does not stop to estimate the particular loss, but imposes upon her the additional burden of covering that she has improvidently caused to others.

The decision must be in favor of the libellants, with an order of reference to ascertain and report the amount of damage.